UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| BRUNO L. GARZON, | ) | No. 18 B 26026 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling in this chapter 13 case is the objection of unsecured creditor Janet D. Krage to confirmation of debtor Bruno L. Garzon's plan. Krage, Garzon's ex-wife, objects to confirmation on two grounds: (1) Garzon has not filed the case or proposed the plan in good faith; and (2) Garzon's plan does not devote all of his projected disposable income to pay unsecured creditors.

The projected disposable income problem need not be addressed because the good faith problem is dispositive. Garzon filed the case and proposed the plan solely to put off paying his debt to Krage under their divorce judgment, perhaps to avoid paying the debt altogether. Krage's objection will therefore be sustained. Confirmation of the plan will be denied. The trustee and Krage are invited to move to dismiss the case.

### 1. Background

The facts are drawn from the parties' papers, Garzon's petition, schedules, and plan, Krage's proof of claim, the court's docket, and the state court's docket in the parties' related divorce case.[1] No facts are in dispute. Because the good faith determination can be made from

---

[1] The court can take judicial notice of its own records as well as the records of other courts in related matters. *In re Sweports, Ltd.*, 565 B.R. 129, 131 n.1 (Bankr. N.D. Ill. 2017).

the papers alone, no evidentiary hearing is necessary. *See Marshall v. Blake*, 885 F.3d 1065, 1083 (7th Cir. 2018) (holding that the bankruptcy court has discretion to decide when to hold an evidentiary hearing on a good faith question).

Krage and Garzon were once married but received a divorce from the Circuit Court of Cook County, Illinois, in November 2015. The judgment in the divorce case required Garzon to pay Krage $10,000 as a property settlement (the nature of the property and the reason for the settlement are unclear but are unimportant) in monthly installments of $500.

Garzon did not pay any of the installments. In February 2016, he filed a chapter 7 bankruptcy case. The trustee issued a report of no distribution, Garzon received his discharge in May 2016, and the case was closed.

With the bankruptcy case concluded, Krage began efforts in the state court to collect Garzon's debt. In December 2017, at Krage's urging, the state court held Garzon in contempt for failing to pay Krage as the divorce judgment required. Garzon moved to have the contempt order vacated, arguing that his debt to Krage had been discharged in the chapter 7 case, but the state court rejected the argument – correctly, *see* 11 U.S.C. § 523(a)(15) – and denied Garzon's motion. The matter was continued to September 18, 2018, for Garzon to purge the contempt.

Meanwhile, Garzon remarried, and in February 2018 he and his new wife had a child. In May 2018, Garzon sold his home in Cicero, Illinois for $179,000 and at the closing received $51,855 in net proceeds. He did not disclose the transaction to Krage or to the state court. Although he was subject not only to the divorce judgment but also to the state court's contempt order, he did not use any of the proceeds to pay Krage. Instead, Garzon paid down credit card debt, made what he describes as overdue "rent" payments (Resp. at 5), paid medical bills, and made a down-payment on a new, more expensive home that he bought in July 2018.

Two months later, in September 2018, Garzon filed a chapter 13 bankruptcy case – he had been threatening since the spring to file one to avoid paying Krage. Garzon's Schedule D disclosed two secured creditors, the lender on his car and the mortgagee on his new home. Schedule E/F disclosed just three unsecured creditors holding a total of $13,669 in claims. One of them is Krage, scheduled with a claim of $10,000. Of the three unsecured creditors, only Krage filed a proof of claim before the November 26 bar date. The amount of her claim is $15,762.92, consisting of the original $10,000 plus post-judgment interest and attorney's fees.[2] Garzon has not objected to the claim.

Garzon has proposed a plan under which he will make monthly payments of $100 for 36 months, for a total of $3,600. In Part 3 of his plan, he proposes to pay his two secured creditors directly rather than from his payments to the trustee. In Part 4, he proposes over the plan term to pay the trustee estimated fees of $162 and his own attorney's fees of $1,750. In Part 5, he estimates that unsecured creditors will receive $1,688, or 12.35% of their claims.[3]

In October 2018, the trustee objected to Garzon's discharge. Because Garzon received the discharge in his chapter 7 case in May 2016, he was not eligible for a discharge in his chapter 13 case. *See* 11 U.S.C. § 1328(f)(1) (stating that a debtor cannot receive a discharge if he received one "in a case filed under chapter 7 . . . of this title during the 4-year period preceding the date of the order for relief under this chapter"). The objection was sustained, and Garzon's

---

[2] Krage's lawyer was listed separately as a creditor on Schedule E/F with a claim of $3,300. Presumably he did not file his own proof of claim because his fees form part of Krage's own claim. Either way, Krage's claim represented 73% of the unsecured debt when the case was filed, and because the bar date has passed, her claim now constitutes 100% of the unsecured debt in the case.

[3] The $1,668 figure actually represents 10.7% of Krage's claim, the only unsecured claim in the case.

discharge was denied.

Krage now objects to confirmation of the proposed plan, arguing that Garzon has not filed his chapter 13 case or proposed his plan in good faith. In response, Garzon admits that he filed the case to "seek relief" from "the pending judgment for a property settlement" entered in the divorce case. (Resp. at 1). Nevertheless, he insists that he has acted in good faith. He says that he has been "forthcoming" and "accurate" in his schedules, disclosing all of his assets, income, and expenses, that he bought the new home to escape an area with higher crime and fewer school choices, and that the proceeds from the sale of the old home were used to pay "reasonable and necessary living expenses." (*Id.* at 6).

## 2. Discussion

Krage's objection will be sustained. Ever since the divorce judgment was entered, Garzon has been engaged in a concerted effort to stall Krage's collection efforts. This chapter 13 case is just the latest episode. The whole point of the case – and the plan Garzon has proposed in it – is to hold her off, paying her little or nothing, until he can file a new chapter 13 case and discharge his debt to her. His bad faith is readily evident. Confirmation will be denied.

Section 1325(a) of the Bankruptcy Code sets out the requirements a chapter 13 debtor must satisfy before his plan can be confirmed. *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 455-56 (6th Cir. 2009). One is that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Another, added in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, is that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7); *see In re Durov*, No. 16-71699, 2017 WL 977026, at *5 (Bankr. C.D. Ill. Mar. 10, 2017).

-4-

The good faith analyses under these two sections are similar but not identical. *See In re Love*, 957 F.2d 1350, 1360 (7th Cir. 1992).[4] The good faith question under section 1325(a)(3) asks whether the debtor in his plan is "'really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?'" *Marshall*, 885 F.3d at 1081 (quoting *In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002) (internal quotation omitted)). The good faith question under section 1325(a)(7) is broader, focusing on "the initiation of Chapter 13 bankruptcy proceedings," and asks more generally "whether the filing is fundamentally fair to creditors." *Love*, 957 F.2d at 1360; *see also In re Furlong*, 426 B.R. 303, 310 (Bankr. C.D. Ill. 2010) ("The focus is on the purpose for and effect of the filing itself . . . .").[5] Under both sections, good faith is determined on a case-by-case basis based on the totality of the circumstances. *Marshall*, 885 F.3d at 1081; *Smith*, 286 F.3d at 466.

To guide the determination, the court of appeals has set out nonexhaustive lists of factors to be considered. *See Smith*, 286 F.3d at 466; *Love*, 957 F.2d at 1357; *In re Smith*, 848 F.2d 813, 817 (7th Cir. 1988); *In re Rimgale*, 669 F.2d 426, 432-33 (7th Cir. 1982). The factors differ slightly depending on whether good faith in filing the case or in proposing the plan is at issue.

• Factors relevant to the debtor's good faith in filing his petition include the nature of his

---

[4] *Love* predates section 1325(a)(7); the decision held that lack of good faith was "cause" for dismissal under section 1307(c). But "[t]he addition of § 1325(a)(7) has been viewed as nothing more than a codification of the long-standing judge-made rule and corollary of § 1307(c) . . . ." *Durov*, 2017 WL 977026, at *5 (internal quotation omitted). Courts have therefore "applied the same standards" to good faith questions under section 1325(a)(7). *Id.*; *see also In re Trainor*, No. 13-09818-JMC-13, 2014 WL 7338901, at *3 (Bankr. S.D. Ind. Dec. 22, 2014) (stating that *Love* "remains good law and is the most helpful case in the § 1325(a)(7) analysis").

[5] The case law suggests that the question of fundamental fairness to creditors underlies both good faith requirements. *See Love*, 957 F.2d at 1357; *see also Marshall*, 885 F.3d at 1081 (asking "whether the filing is fundamentally unfair" in the context of section 1325(a)(3) (quoting *Smith*, 286 F.3d at 466)).

debts; the dischargeability of the debts in a chapter 7 case; the timing of the petition; how the debts arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the petition was filed; and the degree to which the debtor has been forthcoming with creditors and the court. *Love*, 957 F.2d at 1357.

• Factors relevant to the debtor's good faith in proposing his plan include whether his schedules and plan are accurate; whether any inaccuracies amount to an effort to mislead the court; whether the plan affords substantial protection to unsecured creditors; and whether the plan demonstrates "a fundamental fairness in dealing with one's creditors." *Smith*, 286 F.3d at 466; *Rimgale*, 669 F.2d at 432-33.

Garzon did not file this case or propose his plan in good faith. His conduct leading up to the case and in the case itself makes that clear. Garzon's treatment of his ex-wife, Krage, has lacked good faith from the start. After the parties divorced, he failed to make even one monthly installment payment toward the $10,000 debt he owed her under the divorce judgment. Instead, he filed a chapter 7 bankruptcy case a year later, staying her collection efforts. 11 U.S.C. § 362(a). Garzon sought relief under chapter 7 believing he would be able to discharge his debt to Krage.

But the stay was merely temporary because his attempt to discharge the debt was unsuccessful. In seeking relief under chapter 7, Garzon miscalculated: a property settlement under a divorce judgment is dischargeable only in a chapter 13 case, not in a chapter 7 case. *See* 11 U.S.C. §§ 523(a)(15), 1328(a)(2); *see also In re Jeffers*, 572 B.R. 681, 687 (Bankr. N. D. Ohio 2017); *In re Arias Nussa*, 565 B.R. 209, 218 n.5 (Bankr. D.P.R. 2017). So when the chapter 7 case closed and the stay ended, *see* 11 U.S.C. § 362(c), Krage was able to resume her collection efforts, and she did. The state court held Garzon in contempt for failing to comply

with its judgment and rightly rejected his invitation to vacate the contempt order.

Although the judgment remained unsatisfied and the contempt hung over him, Garzon then sold his home at a profit, netting more than $51,000. That sum was enough to pay his debt to Krage several times over. Rather than pay her, though, he concealed the transaction from Krage, paid credit card debt, medical debt, and other debt, and put the rest toward a down-payment on a new home. Krage received nothing. And then Garzon filed another bankruptcy case, this one under chapter 13.

Garzon's latest bankruptcy case is a delay tactic, pure and simple, aimed at Krage. Krage is the only unsecured creditor in the case, holding 73% of the scheduled unsecured debt and, because she alone filed a proof of claim, 100% of the unsecured debt to be paid under Garzon's plan. Because Garzon proposes to pay the two secured creditors directly, all of the plan payments will go to unsecured creditors. Under the plan, Garzon intends to make monthly payments of only $100 for 36 months, meaning Krage would receive $3,600 over the next three years – provided all the payments went to her. But they will not. Garzon must also pay trustee's fees and attorney's fees totaling $1,912. Those are priority unsecured claims that have to be paid in full, 11 U.S.C. § 1322(a)(2), before any payments are made on general unsecured claims, *see* Gen. Order No. 17-02 (eff. Dec. 1, 2017) (describing order of payments). For the first 20 months of the plan, then, Krage will get nothing. And over the life of the plan, she will receive only $1,688 on her $15,763 claim.

If, that is, she receives anything at all. Because Garzon obtained a chapter 7 discharge in May 2016, he cannot obtain one in the chapter 13 case, *see* 11 U.S.C. § 1328(f)(1), and his discharge has been denied. So Garzon's debt to Krage cannot be discharged in this case. But come February 2020, four years will have passed since the chapter 7 discharge, and Garzon will

again be eligible for a chapter 13 discharge. *See id.* Garzon can then voluntarily dismiss this case (or default in plan payments, resulting in a dismissal on the trustee's motion) and file a new case in which he can discharge the debt. In the intervening months, all of the plan payments will go to the trustee and Garzon's attorney. Krage will not receive a dime. But her efforts to collect the judgment in her favor will be stayed – and will be stayed again in the next chapter 13 case.

Garzon is by no means the first debtor to try this gambit. As one noted chapter 13 authority observes:

> A debtor ineligible for a discharge might . . . file a Chapter 13 case when she is facing collection activity. She could file a Chapter 13 case, propose to pay little or nothing to unsecured creditors, dismiss the case once is eligible for a discharge, and then file a new bankruptcy petition to discharge the debts. She could thus keep her creditors at bay during the time that she is not eligible for a discharge. Courts have concluded that such a strategy shows a lack of good faith.

1 Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 4:35 at 245 (2d ed. 2018) (citing, among others, *In re Gonzalez*, No. 08-15277-B-13, 2008 WL 5068837 (Bankr. E.D. Cal. Nov. 25, 2008), and *In Larson-Asplund*, 519 B.R. 682 (Bankr. E.D. Mich. 2014)).

In *Gonzalez*, 2008 WL 5068837, for example, a debtor who had obtained a chapter 7 discharge filed a chapter 13 case before four years had passed, making him ineligible for another discharge. He then proposed a plan under which he would pay a minimal $125 each month for 60 months. Unsecured creditors would receive less than 25% of their claims – and nothing at all for the two years during which priority unsecured claims were paid.

The court had no trouble finding the debtor had not filed his petition in good faith. Because the case served only to "stay any enforcement action by the creditors," paying those

-8-

creditors a fraction of their claims but not discharging them, there was in fact "no reorganization in progress." *Id.* at *2. To make matters worse, the court said, "[b]efore the Debtor has to make any payments to unsecured creditors . . . he will be in a position to dismiss this case and re-file a new chapter 13 which proposes to pay nothing to the unsecured creditors for another two years and sets the Debtor up for discharge after the third year." *Id.* The court declared unacceptable the debtor's attempted "end run" around section 1328(f)(1). *Id.*

More recently, in *Larson-Asplund*, 519 B.R. 682, the court found a plan not proposed in good faith under circumstances similar to the circumstances here. An earlier chapter 7 discharge made the debtor ineligible for a discharge in his new chapter 13 case. The debtor proposed a plan that required him to make minimal payments for 36 months – and would pay no dividend at all to his ex-wife, the only active creditor, who had been trying to collect a property settlement under the parties' divorce judgment.

Because no debts would be discharged, all the plan did was "stay, rather than pay, the Debtor's creditors for three years." *Id.* at 693. In fact, the court said, that was the goal: the petition and plan were motivated solely by the "desire to delay [the debtor's ex-wife] from enforcing [the judgment]." *Id.* The idea was to "keep [the ex-wife] at bay for sufficient time until the Debtor is able to dismiss this case when he becomes eligible to file a new Chapter 13 case in which he can seek a discharge of [the ex-wife's] debt." *Id.* The court rejected this scheme unequivocally: "a plan that proposes de minimis payments on nondischargeable debts, but prevents collection on those debts for the life of the plan is, in the Court's view, an attempt to abuse the spirit of the Bankruptcy Code." *Id.*

Here, as in *Larson-Asplund*, the goal of the debtor in filing the case and proposing the plan is to gain the benefit of the automatic stay, postpone payment of the debt to his ex-wife, and,

if he plays his bankruptcy cards right, never pay the debt at all. But obtaining the stay's protection cannot be the only purpose of a bankruptcy case. *In re Tabor*, 583 B.R. 155, 183 (Bankr. N.D. Ill. 2018). When a case's sole object "is to delay (or defeat) a single judgment creditor," with no benefit to the creditor body as a whole, the case has been filed in bad faith. *In re Liptak*, 304 B.R. 820, 836 (Bankr. N.D. Ill. 2004) (finding a chapter 11 case filed in bad faith where a solvent debtor sought bankruptcy protection simply to derail his ex-wife's efforts to collect from him under a divorce judgment).

In his defense, Garzon stresses the accuracy of his petition and schedules. Accuracy is indeed a factor courts can consider in determining a debtor's good faith. *See Smith*, 286 F.3d at 466; *Love*, 957 F.2d at 1357. But not every factor is relevant in every case. *See, e.g., Smith*, 286 F.3d at 466 (examining "three factors bearing on Mr. Smith's good faith"). More telling here are the nature of his underlying debt (owed to Krage under their divorce judgment); Garzon's prepetition conduct (his failure to pay Krage, the contempt order against him, his concealment of the home sale, and his decision to pay other creditors when he could easily have paid Krage); and, most important, the "fundamentally unfair" chapter 13 case (no discharge possible) and proposed plan (minimal payments to Krage beginning only after 20 months, by which time Garzon will be able to file a new case to discharge the debt). *Marshall*, 885 F.3d at 1081; *Love*, 957 F.2d at 1357.

In short, the totality of the circumstances shows without doubt that Garzon is not "really trying to pay" Krage, but is "trying to thwart" her. *Marshall*, 885 F.3d at 1081. Because Garzon did not file the case or propose the plan in good faith, he has not satisfied – and given the facts cannot satisfy – sections 1325(a)(3) and (a)(7) of the Code. Confirmation of the plan will be denied.

### 3. Conclusion

The objection of Janet D. Krage to confirmation of debtor Bruno L. Garzon's plan is sustained. Confirmation is denied. Krage and the trustee are invited to move to dismiss this case under section 1307(c). A separate order will be entered consistent with this opinion.

Dated: December 3, 2018

_____
A. Benjamin Goldgar
United States Bankruptcy Judge